800 F.2d 260
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Horace L. HOFF, Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Appellee.
 No. 85-2083.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 6, 1986,
Decided Sept. 11, 1986.
 
 H.V. Sandifer, for appellant.
 George G. Davidson, Office of the General Counsel, Social Security Division, Department of Health and Human Services (Vinton D. Lide, U.S. Atty.; Donald A. Gonya, Asst. General Counsel; Randolph W. Gaines, Deputy Asst. General Counsel for Litigation; A. George Lowe, Chief Disability Litigation Branch; Henry D. McMaster, U.S. Atty. on brief), for appellee.
 D.S.C.
 AFFIRMED.
 PER CURIAM:
 
 
 1
 Horace L. Hoff has appealed from the decision of the district court denying him social security benefits for which he had applied.
 
 
 2
 Horace L. Hoff filed his application for disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, and for supplementary security income under section 1611 and related sections of the Act. He met the special earnings requirements of the Act on July 4, 1977, the date he alleges he became unable to work. His claim was denied administratively, and, also after a hearing, by an Administrative Law Judge. The Administrative Law Judge decision became the decision of the Secretary on May 28, 1982. He thereafter filed this action.
 
 
 3
 The Secretary found that the medical evidence demonstrated that the appellant, "despite the significant degree of degenerative joint disease in the lumbosacral spine and limitation of motion in the left upper extremity" and although he had a "degree of respiratory impairment" (which might be arrested if he would discontinue smoking), "retain[ed] the residual functional capacity for at least sedentary to light work activity." This finding was clearly supported by the medical evidence. A vocational expert testified that, based on a consideration of the appellant's physical condition, age, education, and work experience, there still existed a wide range of sedentary type work which he is capable of performing such as inspector, light delivery or clerical type work. On the basis of these findings and the evidence of the vocational expert, the Secretary denied the appellant's claim and that denial was sustained by the district judge. On review of the record, we affirm the denial.
 
 
 4
 The judgment of the district court is accordingly
 
 
 5
 AFFIRMED.
 
 HALL, Circuit judge, dissenting:
 
 6
 I cannot agree with the majority's conclusion that a review of the record supports the Secretary's decision to deny benefits to Hoff. For this reason, i respectfully dissent.
 
 
 7
 Hoff was born on September 15, 1930, and was 51 years old at the time of the administrative hearing on his claim. He has an eighth-grade education and worked in the construction industry as a heavy laborer performing carpentry. Hoff testified that he last worked in July, 1977, when he became disabled due to pain in his back and legs and a loss of grip and pain in his left hand. He stated that his condition continued to deteriorate and that he is unable to drive, do any household chores or yard work, or sit or stand for more than ten minutes at a time. Hoff testified that he wears a back brace all of the time and takes prescription drugs, including Robaxin and Darvon, two or three times a day for his pain. According to claimant, the medication makes him nervous, forgetful, and "fuzzy."
 
 
 8
 Madge Hoff, the claimant's former wife, testified that Hoff, who lives in a back room in her house, is unable to help with the housework, has difficulty sleeping, and often suffers from shaking in his legs and hands. She also testified to claimant's memory problems and to his inability to write or to carry on a normal conversation. Mrs. Hoff confirmed that her former husband's condition had deteriorated since she first met him in 1976.
 
 
 9
 The medical evidence reveals that Hoff has a history of emphysema, excessive alcohol intake, and a severe back imp airment. A chest x-ray and pulmonary function studies performed on July 24, 1979, revealed mild to moderate chronic obstructive pulmonary disease and minimal basilar fibrosis.
 
 
 10
 Dr. Narayan P. Deb Roy, an orthopedist, reported on July 27, 1979, that claimant had a loss of lumbar lordosis, was unsteady when standing on his toes and heels, and had muscle rigidity and tenderness in his lower back with limitation of motion of the lumbar spine. Dr. Deb Roy reported that straight leg raising was possible to 75-80? bilaterally and that Hoff had satisfactory motion of the hip, knee and ankle joints with no loss of sensation in the legs or feet. X-rays taken at that time revealed mild degenerative arthritic changes in the lumbar spine and moderately reduced disc space at L2-3, L4-5, and L5-S1 with sclerosis and exostosis formation. Dr. Deb Roy opined that the objective findings were compatible with Hoff's complaints of pain. He concluded that claimant would never be able to return to manual work, including heavy lifting, but expressed the belief that Hoff could perform "some secretary [sic] type of job if he is capable of performing it because of his trade and training."
 
 
 11
 A report from the Veterans Administration ("VA") Hospital in Columbia, South Carolina, dated November 8, 1979, indicates that claimant suffers from degenerative joint disease (lumbar) with degenerative disc syndrome at L2-3, L4-5, and L5-S1. The examining physician, Dr. Fox, stated that in his opinion Hoff was totally and permanently disabled for all but very light or sedentary work. In a subsequent report from the VA Hospital, dated October 17, 1980, another VA physician, Dr. John parrish, stated that claimant's low back pain was not responding to treatment. Dr. Parrish concluded that Hoff was unable to work as a result of a permanent disability.
 
 
 12
 A lumbar myelogram performed in November, 1980, revealed osteoarthritis with osteophyte formation at L4-5. Dr. Mark Lafferty of the VA Hospital reported that surgery would be considered only as a last resort. Noting that pain would be the major limiting factor, Dr. Lafferty recommended that Hoff return to light duty work without long periods of stooping, standing, bending, or lifting.
 
 
 13
 Dr. Edwin K. Fennell, an orthopedic surgeon, reported on December 9, 1980, that although he walked well on his toes and heels with no evidence of weakness in his legs, claimant stood in a flexed position constantly and had marked paraspinous muscle spasm in the lumbar areas. Dr. Fennell observed that straight leg raising was full bilaterally without production of pain, but that there was some decreased sensitivity over the right thigh. X-rays revealed marked disc degeneration and large osteophyte production and narrowing at L4 and L5-S1, as well as disc degeneration at L2-3. According to Dr. Fennell, Hoff had a severe disc degenerative problem in his low back productive of pain and limited motion, which precluded him from returning to his past work, "namely heavy manual labor or carpentry work of any sort."
 
 
 14
 Dr. James A. McCarthy, an orthopedic surgeon, reported on June 1, 1981, that Hoff could stand erect but had a great deal of shaking. Dr. McCarthy further observed muscle spasms through out the low back, a limited range of motion, and straight leg raising to 90? with pain. X-rays of the lumbosacral spine revealed a severe degree of flattening resulting in loss of lumbar lordosis, marked narrowing at the L2-3 and L5-S1 spaces, and generalized spurring throughout the spine. Dr. mccarthy opined that Hoff had extensive degenerative joint disease changes of the lumbo-sacral spine, resulting in a 45% impairment of his low back, which would preclude any type of manual activity. Dr . McCarthy noted that in light of claimant's limited education and inability to sit or lie down for long periods of time, it was doubtful he would be able to engage in any type of gainful employment.
 
 
 15
 In a report dated June 15, 1981, Dr. Emmett M. Lunce ford, Jr., an orthopedic surgeon, stated that Hoff had a moderate dorsal kyphosis. According to Dr. Lunceford, straight leg raising was possible to 80% bilaterally and claimant had some limitation of motion in his lumbar spine with discomfort on extreme motion. Dr. Lunceford noted that Hoff had a definite weakness in the left hand and left upper extremity and some decreased sensitivity over the left fingers. x-rays of the lumbosacral spine revealed some narrowing of the intervertebral spaces at the L4-5, S1 level with osteoarthritic changes and some osteophyte formation, According to Dr. Lunceford, claimant had at least a 50% functional impairment of his back due to marked restriction of movement. He also noted that Hoff had only about 20% of the normal function in his left upper extremity due to weakness in his left hand. Dr. Lunceford did not express an opinion on claimant's ability to work.
 
 
 16
 A subsequent medical report from the VA Hospital reveals that on June 17, 1961, claimant reported continuing pain in his back. In response to the question on the report form concerning when the patient could return to work, the examining physician made the notation "p.r.n.," meaning "according as circumstances may require..."[1] Notes dated June 22, 1981, and September 8, 1981, also indicate that Hoff was sent to a neurosurgery clinic for evaluation and possible scheduling of surgery. At least as of the time of Hoff's hearing, however, surgery had not been recommended.
 
 
 17
 At claimant's hearing, Thomas C. Neil, Ph.D, a vocational expert, testified that claimant's past work was heavy and semi-skilled and involved the transferable skills of manual dexterity and hand and eye coordination. in response to a hypothetical question, Dr. Neil testified t hat if Hoff could engage in work activities which required no heavy lifting, which allowed him to sit, stand or walk as needed, and which would not involve any prolonged stooping or bending, he could perform sedentary or light work, such as assembly, inspection, and light delivery jobs. However, Dr. Neil also stated as follows:
 
 
 18
 [W]ithin the claimant's description of his ailments and pain, as you said, the continuous and prolonged pain, the limitations he has stated with regard to his ability to sit and stand, the functional capacity of the left arm and hand, etc. Those combinations of impairments would make the claimant no [sic] be able to engage in any type of work.
 
 Dr. Neil further testified that:
 
 19
 If we take the hypothesis [which states that there is] the continuous pain and the statements the claimant made along with the eight to ten minutes of being able to stand, sit, shaking of the left arm and leg, in conjunction with the inability to drive, and the lack of concentration, the combination of those--singularly they would not preclude an individual from doing work--but the combination in regard to the occupations that I had stated previously, he would not be able to engage in any type of work.
 
 
 20
 The ALJ concluded that Hoff's degenerative joint disease of the lumbar spine and his emphysema were severe impairments which prevented claimant from performing his past work. Nevertheless, the ALJ found that Hoff's allegations of disabling pain were not supported by the evidence.' Citing both the Secretary's medical-vocational guidelines and the vocational expert's testimony, the ALJ further concluded that Hoff retained the residual functional capacity to perform sedentary work.
 
 
 21
 Following the Appeals Council's denial of review, Hoff appealed to district court, where the magistrate, to whom the case was referred, recommended reversal of the Secretary's decision and an award of benefits to Hoff. The district court, how ever, rejected the magistrate's recommendation and affirmed the denial of benefits as supported by substantial evidence.
 
 
 22
 Contrary to the conclusion reached by the district court and by the majority in this appeal, I am convinced that the Secretary's decision is lacking in substantial evidence. Without question, the objective medical evidence from the physicians who examined Hoff supports the existence of claimant's severe back impairment, emphysema, and pain. The records also suggest the possibility of alcoholism and certainly confirm the progressive nature of Hoff's lumbar spine disease. Dr. Parrish's VA report of October 17, 1980, concludes that appellant is unable to work. Dr. McCarthy reaches the same conclusion.
 
 
 23
 While earlier medical opinions may be read to suggest that Hoff remains capable of performing some light or sedentary work, even the physicians who made such statements, including Doctors Deb Roy, Lafferty, and Fennell, drastically qualified claimant's work capacity. Moreover, dealing, as we are here, with a progressively degenerative disease, those earlier opinions are far outweighed by the more rec ent medical opinions finding Hoff unable to work.[2] Finally, the vocational expert, Dr. Neil, testified that when Hoff's impairments are viewed in combination, he cannot perform any work. Under these circumstances, I fail to see how the Secretary's denial of benefits can stand. At a minimum, the Secretary in this case has failed to recognize the progressive nature of Hoff's disease, has misinterpreted the vocational expert's testimony, and has ignored both the effect of claimant's pain medication and the combination of his multiple impairments. Such improper decision making entitles Hoff to at least a remand for further consideration, if not an outright reversal and award of benefits. i would, accordingly, vacate the judgment below and would remand the case for further proceedings.
 
 
 
 [1]
 Dorland's Illustrated Medical Dictionary, 25th Edition, p. 1256 (1974)
 
 
 [2]
 I do not find the vA's later notation of "p.r.n." to contradict Dr. Parrish's opinion that appellant is unable to work. In fact, I do not find the notation responsive at all to the ability-to-work issue
 Nor do I find the state agency's physical capacities evaluation forms to be reliable evidence of Hoff's abilities, given the assertion by appellant's counsel at oral argument that they were completed without the benefit of either a physicial examination or the later medical reports.